RANDALL L.K.M. ROSENBERG #4847-0
CHARLES E. McKAY #3512-0
MOANA A. YOST #7738-0

ROSENBERG & McKAY
733 Bishop Street
2070 Makai Tower, Pacific Guardian Center
Honolulu, Hawaii 96813
Telephone No.: (808) 536-4270
Facsimile No.: (808) 533-0434
E-Mail: grmlaw@hawaii.rr.com

Attorneys for Plaintiff

FILED

2014 APR 22  PM 12: 23

D. MORIOKA, CLERK
SECOND CIRCUIT COURT
STATE OF HAWAII

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| D.K., | ) | CIVIL CASE NO.: 14-1-0251 (1) |
| | ) | (Other Non-Vehicle Tort) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLAINT; DEMAND FOR JURY TRIAL; |
| | ) | SUMMONS |
| CORPORATION OF THE PRESIDENT | ) | |
| OF THE CHURCH OF JESUS CHRIST | ) | |
| OF LATTER-DAY SAINTS, a Utah | ) | |
| Corporation; MAUI LAND & PINEAPPLE | ) | |
| COMPANY, INC., a Hawaii Corporation; | ) | |
| YOUTH DEVELOPMENT ENTERPRISES, | ) | |
| INC., a Utah Corporation; and JOHN | ) | |
| DOES 1-10; | ) | |
| | ) | |
| Defendants. | ) | |

COMPLAINT

COMES NOW Plaintiff D.K., designated herein under a fictitious name to protect said Plaintiff's privacy interest, by and through his attorneys, ROSENBERG & McKAY, and for a Complaint against the above-named Defendants, alleges and avers the following:

I hereby certify that this is a full, true and correct copy of the Original.

_____
Clerk, Second Circuit Court

## I. PARTIES AND FACTUAL ALLEGATIONS

1. At all times material hereto, Plaintiff D.K. was residing in the State of Hawaii. Plaintiff currently resides in the State of Arizona. Plaintiff is an adult man who, as a minor, was subjected to sexual abuse and other harm as a result of the wrongful acts or omissions of the Defendants. Plaintiff brings these claims pursuant to Hawaii Revised Statutes § 657-1.8 and will file the certificate of merit required under said statute under seal as permitted by the Court.

2. The Church of Jesus Christ of Latter-day Saints, also known as the Mormon Church, or the LDS Church, is an unincorporated religious association that conducts its world-wide affairs, in part, through various corporate entities. The Mormon Church conducts its affairs, in part, in the State of Hawaii.

3. Defendant CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS (hereinafter "Defendant CORPORATION") is a Utah corporation, and at all material times was doing business in the County of Maui, State of Hawaii.

4. Defendant CORPORATION and religious entity (Mormon Church) described in the above paragraphs shall hereinafter be referred to as the LDS Defendants. All references below to the LDS Church, the Mormon Church or the Church similarly relate to the LDS Defendants.

5. Defendant MAUI LAND & PINEAPPLE COMPANY, INC., is a Hawaii Corporation operating and existing pursuant to the laws of the State of Hawaii and at all material times was doing business in the County of Maui, State of Hawaii. At all material times, Defendant MAUI LAND & PINEAPPLE COMPANY, INC. and/or its subsidiaries ("Defendant ML&P") was engaged in the business of growing, cultivating, harvesting, processing/packaging and selling pineapples.

2

6. Defendant YOUTH DEVELOPMENTAL ENTERPRISES, INC. is a Utah Corporation that has been inactive since 1996; at all material times, it was doing business in the County of Maui, State of Hawaii. At all material times, DEFENDANT YOUTH DEVELOPMENTAL ENTERPRISES, INC ("Defendant YDE") was engaged in the business of recruiting teenage boys to participate in the growing, cultivating and harvesting of pineapples on land owned by Defendant ML&P.

7. Plaintiff is presently unable to ascertain the identities and capacities of Defendants JOHN DOES 1-10 and therefore, has named said Doe Defendants fictitiously; said Doe Defendants are in some manner presently unknown to Plaintiffs responsible for the injuries and damages described herein, and/or are related to the named Defendants and are the principals, agents, representatives, subsidiaries, parent companies, employers, employees, partners, limited partners, joint venturers, and/or independent contractors of the named Defendants, and/or had duties of reasonable care to Plaintiff and the breach of one or more of the foregoing duties caused the injuries and damages described herein. Pursuant to Rule 17(d) of the Hawaii Rules of Civil Procedure, Plaintiff will name said Doe Defendants when their identities and capacities are determined.

8. Initially, in 1971, a joint venture existed between the LDS Defendants, the Boy Scouts of America and Defendant ML&P (YDE had not yet been conceived). Upon information and belief, starting in about 1971, LDS Defendants recruited teenage boys from the LDS Church population in Utah and southeastern Idaho, transported these boys to Hawaii, and supervised them as they worked in Defendant ML&P's pineapple fields. The LDS Defendants acted as a de facto pineapple picking contractor for Defendant ML&P. Upon information and belief, in about 1973, in order to have this pineapple picking program certified by the Federal

Government, Defendant YDE joint ventured with Defendant ML&P to carry on these activities. Thereafter, YDE recruited teenage boys, all minors, from Mormon Wards and Mormon scouting organizations primarily from Utah and southeastern Idaho, transported them to Hawaii, and supervised them as they worked the Defendant ML&P pineapple fields. These boys were supervised by LDS men, in their twenties, who qualified for supervisory positions by completing 2 year missions for the LDS Church.

9. Defendant ML&P owned the land where the pineapples were cultivated, Defendant ML&P also owned the housing, cafeteria and other buildings where the boys resided, studied and worshiped. Upon information and belief, the Plaintiff was paid by Defendant ML&P.

10. Defendant YDE and LDS Defendants provided an education program, similar to a home school program for the boys. These Defendants also provided religious education and Mormon religious services for the boys. There was a building on ML&P's property, next to the dormitories, that was utilized as a cafeteria, school, and an LDS (Mormon) Church. It was mandatory for the boys to participate in the home school type program; it was also mandatory that the boys attend religious services.

11. As part of this religious education, the boys were also required to adhere to strict "Mormon missionary rules" while at the camp and during the entirety of their time on Maui, which included no physical contact with females. It was represented to the boys and their parents/guardians that this experience was, among other things, a training ground for the boys to become Mormon missionaries when they reached the appropriate age.

12. From time to time, religious leaders from the LDS Defendants headquarters in Salt Lake City would come to visit the boys. These camps essentially doubled as a Mormon missionary training center.

13. LDS Defendants administer the LDS Church through a multilevel structure that follows a strict hierarchical form. At the local level are wards or branches, consisting of a geographic area administered by a Bishop or Branch President and two counselors, who together comprise the "bishopric" or "branch presidency". A cluster of eight to twelve Wards and/or Branches is grouped in a Stake which is administered by a Stake President. The Bishop or Branch President answers directly to the Stake President. Stakes, in turn, are grouped into areas, which are administered by an Area President. All Stake Presidents and Area Presidents answer directly or indirectly to the President of the Church of Jesus Christ of Latter Day Saints, otherwise known as the Prophet, Seer and Revelator. The President of the Church is assisted by his Counselors and Apostles, known as the "Quorum of the Twelve," who govern the affairs of the LDS Church worldwide.

14. Within each Stake of the LDS Church, there exists a Stake High Council, which is a body of Melchizedek Priesthood holders who are called and set apart in each Stake to assist and advise the Stake President. Under the direction of the Stake President, the Stake High Council has important Church powers and functions and helps oversee the work of the Church within the Stake. A member of the Stake High Council serves as an advisor to the Stake President, provides counsel to the Stake President and carries out specific assignment for the Stake President and the Church.

15. Those who have been baptized into the Mormon faith are known as members. Members are taught that Stake Presidents, Stake High Councilors, Bishops and Branch Presidents are "called by God" to lead in those respective offices. Members are further taught that the decisions of Bishops and Branch Presidents, within their scope of authority, are guided by divine revelation; that these men possess inspired wisdom and understanding to protect

and guide members under their stewardship. Specifically, the LDS Defendants teach that a Branch President:

> is the shepherd of a branch, presiding in love and kindness over all branch members. He sets an example in offering as a sacrifice unto the Lord a "broken heart and a contrite spirit" (3 Nephi 9:20) and testifies of the divinity of the Lord, Jesus Christ. Within the branch, the branch president:
>
> - Is the presiding priesthood leader.
> - Is the common judge.
> - Directs the care for the poor and needy.
> - Takes care of the branch finances and records.
>
> Members of the branch presidency watch over and strengthen branch members, conduct the opening exercises of priesthood meetings, preside over the Aaronic Priesthood, and conduct sacrament meetings.

*LDS.ORG,* "Branch Presidency," *Branch Guidebook,* 3.

16. The Maui pineapple camps were organized into one or more branches or wards, and a stake. The branch and stake leaders were composed primarily of returned Mormon missionaries but selected or called by the LDS Church. Other lesser supervisors were selected or called by the LDS Defendants and were known as "lunas."

17. Personal jurisdiction of the Defendants is established pursuant to HRS § 634-35. Jurisdiction over this action rests in the Circuit Court, State of Hawaii, pursuant to Hawaii Revised Statutes ("HRS") § 603-21.5. Venue for this action properly is in the Circuit Court of the Second Circuit, State of Hawaii, pursuant to HRS § 603-36 as Plaintiff's claims for relief arose in said circuit.

18.     Between August and December of 1993, Plaintiff worked at the Maui pineapple camps. During this time, while being employed by and supervised by Defendants, he was sexually abused by a luna. The luna, at all relevant times, was employed by Defendants YDE and ML&P, and acting as an agent and in the leadership roles mentioned above, for and on behalf of the LDS Defendants. In attempting to fight off the sexual advances of the luna, which were intended by the luna to be violent and harmful, Plaintiff severely injured his fingers on broken glass, requiring medical treatment. After Plaintiff reported the conduct of the luna to other camp leaders, he was harassed and verbally abused by camp leaders and the other lunas for the rest of his time at the camp.

19.     Defendant YDE and the LDS Defendants, including the luna described previously, had a special relationship with the Plaintiff. Defendants and their agents and representatives assumed responsibility for the spiritual well-being of Church members and non-members attending the camps and religious services, whether as clergy or volunteers appointed by Church officials, or by way of the "Mormon missionary training" that existed. Specifically, members of the LDS Defendants who are not specifically named in this complaint, while acting in their capacities as Stake President, Branch President, Stake High Counselor, counselor in the Branch Presidency, and lunas, were held out by the Church as its agents and/or employees and placed in positions of responsibility and authority over the workers that the pineapple camps, including Plaintiff. Thus, each had a special relationship with the boys in the pineapple camps, including Plaintiff. This relationship gave rise to a duty to protect Plaintiff from foreseeable risk of harm from other members of the congregation and from those whom the Church placed in positions of responsibility and/or authority over them.

20. At times material hereto, Defendants YDE and ML&P and LDS Defendants, by and through its employees and agents, had either actual or construction notice of the sexual abuse that was being inflicted upon Plaintiff and others and failed to take action to protect Plaintiff or prevent the lunas from sexually abusing others.

21. Prevention of child abuse is of paramount importance to all members of society regardless of political or religious affiliation. Subjecting minors to sexual abuse is not conduct protected by the First Amendment or separation of church and state.

## II. FIRST CAUSE OF ACTION - EQUITABLE RELIEF

22. PLAINTIFF incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

23. Plaintiff is entitled to equitable relief from this Court, for non-monetary redress and the protection of Plaintiff and other similarly situated members of the public and children, as follows:

   a. That LDS Defendants change its current corporate policies regarding reporting of suspected child sexual abuse. Upon information and belief the current policy is set forth in *2013 Handbook 2: Administering the Church, Section 13.6.18* which provides that "If a leader becomes aware of physical, sexual or emotional abuse of someone during a Church activity, he or she should contact the bishop immediately. Instructions for bishops are provided in *Handbook 1:17.3.2,*" which provides in pertinent part, "In the United States and Canada, the Church has established a help line to assist stake presidents and bishops in cases of abuse ... When calling the help line, leaders will be able to consult with professional counselors and legal specialists who can help answer questions and formulate steps to take ... If confidential information indicates that a member's abusive activities have violated applicable law, the branch

president, bishop or stake president should urge the member to report these activities to the appropriate government authorities. Leaders can obtain information about local reporting requirements through the help line. Where reporting is required by law, the leader encourages the member to secure qualified legal advice. To avoid implicating the Church in legal matters to which it is not a party, Church leaders should avoid testifying in civil or criminal cases or other proceedings involving abuse." *Handbook 1, State Presidents and Bishops 2010, Section 17.3.2.*;

      b. Because the current policies do not adequately protect children, rather aim to protect the LDS Defendants, these policies should be changed and include the following:

          i. Where a charge of sexual abuse of a child has been made against any agent, leader, or member of the Church, he or she shall be immediately removed from exposure to children and all appropriate safeguards be made to keep him or her away from children pending investigation;

          ii. Whenever any leader or member in the Church has reasonable suspicion of child sexual abuse, whether the abuse happened during a "Church activity" or not, this leader or member shall report the abuse first to the police and child protective services;

          iii. Every Church leader shall be a mandatory reporter of child sexual abuse, regardless of whether mandatory reporting is required by law; and

          iv. There shall be an affirmative statement in both *Handbook 1 and Handbook 2* that leaders and members shall cooperate with civil and criminal authorities in cases involving child sexual abuse; this includes truthfully testifying at depositions, hearings, trials and other proceedings, regardless of whether such testimony would implicate the Church or not.

      c. That for a period of not less than ten (10) years from entry of judgment, LDS Defendants post on the home page of their websites all known pedophiles who are members of the Church and post the last known addresses of each in order to alert people of this danger;

9

   d. That the person(s) with authority to act on behalf of the LDS Defendants request in writing that the Attorney General of the State of Hawaii form a Joint Task Force on Child Protection to annually investigate and monitor the LDS Defendants and all institutions under the auspices of the LDS Defendants;

   e. That Defendants never seek to direct, pay, or hire any agent or employee or third party to retract, oppose, or challenge the constitutionality or legitimacy of any reform of a civil or criminal statute of limitations, mandatory child abuse reporting clergy exemptions, or repeal of the clergy's-penitent privilege or other laws which serve to shield child sexual abusers from investigation, apprehension, prosecution, and conviction in Hawaii or similar legislation or law in any other state or jurisdiction;

   f. That LDS Defendants establish "age appropriate" sex abuse training and educational program for children ages 3-18. That this program shall include a "safe haven" for children to report sexual abuse; that this "safe haven" include three persons in each "Ward" that are designated to speak with children about sexual abuse; that the children are taught they can go to any of the three that they feel most comfortable with; that if one of these designated persons has reasonable suspicion of child sexual abuse, whether the abuse happened during a "Church activity" or not, this designated person shall report the abuse first to the police and child protective service;

   g. That LDS Defendants adopt a whistleblower policy concerning the method by which a report concerning abuse within LDS defendants can be made and expressly providing that LDS Defendants will not take any retaliatory actions against persons who report such information in good faith;

  h. That annually, the President of The Church of Jesus Christ of Latter-Day Saints or a person authorized to act on his behalf, make a written statement that there exists no undisclosed knowledge that any leader, or member of LDS Defendants has sexually abused any person in Hawaii, or that if they have such knowledge of any abuse it has been reported to Office of the Attorney General of the State of Hawaii. Each statement shall be signed and dated under penalty of perjury. A copy of this signed and dated statement shall be retained in an appropriate file in perpetuity; and

  i. That within thirty (30) days after entry of Judgment, Defendants send letters of apology to Plaintiffs. Letters of apology will state that Plaintiff was not at fault for the abuse and that Defendants take responsibility for the abuse.

### III. SECOND CAUSE OF ACTION – GROSS NEGLIGENCE OF DEFENDANTS ML& P, YDE, and LDS DEFENDANTS

24. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

25. At all times material hereto, these Defendants had certain duties and obligations imposed upon them and owed to Plaintiff and other minors to protect them against harm, injury, exploitation, and sexual abuse from the perpetrator. Said duties and obligations include, but may not be limited to:

  a. The duty and obligation to protect the minors entrusted to them from harm, injury, exploitation, and sexual abuse and to ensure the general safety and well-being of Plaintiff;

  b. The duty and obligation to warn the minors entrusted to them against harm, injury, exploitation, and sexual abuse and to warn against dangers to the general safety and well-being of Plaintiff;

  c. The duty and obligation to realize the extreme harm in exposing Plaintiff and other children to the perpetrator, and to affirmatively prevent or avoid such exposure to harm, injury, exploitation, and sexual abuse, even though the conduct of the perpetrator was intentional and/or criminal;

  d. The duties and obligations not to hire, retain, or promote; and the duties and obligations to investigate, supervise, and oversee the perpetrator, so as not to expose Plaintiff and other minors to harm, injury, exploitation, and sexual abuse; and

  e. The duty and obligation not to place the perpetrator in a position that, by virtue of his position, enabled the perpetrator to harm, injure, exploit, and sexually abuse Plaintiffs.

26. These Defendants had a duty to protect Plaintiff from the foreseeable harm of sexual abuse by the lunas and others. These Defendants had actual knowledge through their agents, the lunas, who at all relevant times, while sexually abusing the Plaintiff, were acting as agents in a leadership and/or supervisory role of some capacity for each of these Defendants.

27. Defendants breached said duties by, inter alia, acting or failing to act under circumstances or conditions likely to produce great harm to Plaintiff and other minors; causing or permitting Plaintiff and other minors to suffer unjustifiable pain and/or mental suffering, or while having the care or custody of Plaintiff, causing or permitting Plaintiff to be injured, or causing or permitting Plaintiff to be placed in situations where harm would likely occur, or as these breaches of duty are further explained in the above paragraphs of this complaint. Such acts or omissions of these Defendants were grossly negligent.

28. The wrongful conduct of these Defendants was the proximate cause and/or substantial factor of severe and permanent emotional, mental, and pecuniary damages to Plaintiff as further alleged herein.

## IV. THIRD CAUSE OF ACTION – GROSS NEGLIGENCE OF DEFENDANT YDE and LDS DEFENDANTS BASED ON SPECIAL RELATIONSHIP

29. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

30. LDS Defendants and Defendant YDE, through their agents and appointees, undertook a protective custodial relationship and otherwise had a special relationship with the Plaintiff, who was then a minor. As a result, Defendants had an affirmative duty to protect Plaintiff from the known and reasonably foreseeable risk that he would be sexually abused by their employees including the lunas.

31. These Defendants breached their duties by:

    a. Bringing Plaintiff into contact or association with the lunas. The LDS Defendants and Defendant YDE knew or should have known of the lunas wrongful acts;

    b. Exposing the Plaintiff to the lunas and creating opportunity for the lunas to abuse Plaintiff;

    c. Failing to warn the Plaintiff and/or his family that they knew or had reasonable cause to suspect and/or should have known that supervisors and lunas at the pineapple camps sexually abused minors; and

    d. Engaging in the other acts and omissions described elsewhere in this complaint.

32. The wrongful conduct of these Defendants was the proximate cause and/or substantial factor of severe and permanent emotional, mental, and pecuniary damages to Plaintiff as further alleged herein.

33. Plaintiff is entitled to compensation for past and future medical expenses, wage loss, other out-of-pocket expenses, pain and suffering, severe emotional distress and mental

anguish, the loss of future enjoyment of life, and other special, general, and punitive damages allowed by law.

34. To the extent that one or more of Defendants constitute Plaintiff's employer, the conduct described above, and committed by Plaintiffs' co-employees constitutes "sexual harassment or sexual assault and infliction of emotional distress" excepted from workers' compensation exclusivity pursuant to Hawaii Revised Statutes §386-5 and "willful and wanton misconduct" excepted from workers' compensation exclusivity pursuant to Hawaii Revised Statutes §386-8.

35. Plaintiff's claims recited herein arise from the intentional sexual misconduct and abuse of the luna described previously in concert with the gross negligent conduct of Defendant ML&P, YDE and the LDS Defendants. Therefore, Defendants are jointly and severally liable for the harm sustained by the Plaintiff.

WHEREFORE, PLAINTIFF demands judgment against each DEFENDANT, jointly and severally, as follows:

    A. For the equitable relief described above;

    B. For an award of special damages, in an amount to be proven at trial;

    C. For an award of general damages, in an amount to be proven at trial;

    D. For an award of punitive or exemplary damages, in an amount sufficient to punish Defendants and to serve as a warning and example to others;

    E. For an award of reasonable attorneys' fees and costs, prejudgment interest, and post-judgment interest, as permitted by law; and

F. For such other and further relief as the Court deems just and equitable under the relevant circumstances.

DATED: Honolulu, Hawaii, ____APR 2 2 2014____.

_____
RANDALL L.K.M. ROSENBERG
CHARLES E. McKAY
MOANA A. YOST

Attorneys for Plaintiff

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| D.K., <br><br> Plaintiff, <br><br> vs. <br><br> CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation; MAUI LAND & PINEAPPLE COMPANY, INC., a Hawaii Corporation; YOUTH DEVELOPMENT ENTERPRISES, INC., a Utah Corporation; and JOHN DOES 1-10; <br><br> Defendants. | CIVIL CASE NO.: _____ <br> (Other Non-Vehicle Tort) <br><br><br> DEMAND FOR JURY TRIAL |

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues presented by the so triable.

DATED: Honolulu, Hawaii, ___APR 2 2 2014___.

_____
RANDALL L.K.M. ROSENBERG
CHARLES E. McKAY
MOANA A. YOST

Attorneys for Plaintiff

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| D.K., <br><br> Plaintiff, <br><br> vs. <br><br> CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation; MAUI LAND & PINEAPPLE COMPANY, INC., a Hawaii Corporation; YOUTH DEVELOPMENT ENTERPRISES, INC., a Utah Corporation; and JOHN DOES 1-10; <br><br> Defendants. | CIVIL CASE NO.: _____ <br> (Other Non-Vehicle Tort) <br><br><br> SUMMONS |

## SUMMONS

TO ALL DEFENDANT(S)

You are hereby summoned and required to file with the court and serve upon ROSENBERG & McKAY, plaintiff's attorney, whose address is 733 Bishop Street, Suite 2070, Makai Tower, Honolulu, Hawaii 96813, an answer to the Complaint which is herewith served upon you, within 20 (twenty) days after service of the Summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 PM AND 6:00 AM ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTIFLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.

A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST DISOBEYING PERSON OR PARTY.

DATED: Wailuku, Maui, _____APR 2 2 2014_____

/sgd/ D. MORIOKA (seal)
_____
Clerk of the Second Circuit Court